UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JERRELL HENRY,

                                   Petitioner,                DECISION AND ORDER

-vs-

                                                               19-CV-6627 (CJS)

MR. COVENY,

                                   Respondent.
_____

## I. INTRODUCTION

This matter is before the Court on Petitioner Jerrell Henry's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he asks the Court to vacate his conviction and sentence for murder, order a new trial, and direct that prior to trial Henry is entitled to a *Mapp* hearing.[1] Pet., 15,[2] Aug. 26, 2019, ECF No. 1. For the reasons set forth below, Henry's application [ECF No. 1] is denied.

## II. BACKGROUND

The reader is presumed to be familiar with the facts and procedural history of this action. In March 2013, Henry was charged with murder in the first degree in the County Court of Monroe County, New York by way of a grand jury indictment. Trial Transcript, vol. 1 ("Tr1"), 3, May 13, 2020, ECF No. 16-4. In June 2013, Henry's trial counsel filed pretrial motions seeking, in pertinent part, suppression of evidence seized or discovered as a result of Henry's arrest

---

[1] "A *Mapp* hearing is called for when the defendant alleges that physical evidence sought to be used against him or her was obtained illegally by law enforcement officers and is inadmissible at trial." *Montgomery v. Wood*, 727 F. Supp.2d 171, 186 (W.D.N.Y. 2010) (referencing *Mapp v. Ohio*, 367 U.S. 643 (1961)).

[2] Because several filings in this case consist of aggregations of multiple documents, the page numbers referenced throughout this decision and order are those automatically generated by the Court's CM/ECF electronic filing system for each of the files referenced.

1

because the relevant police agencies did not have a valid and legal search warrant. State Record, vol. 1 ("SR1"), 75, May 13, 2020, ECF No. 16-2. In July 2013, the trial court found the motion to be without merit. SR1 at 123–24.

Then, in October and November 2013, Henry filed two *pro se* motions with the Court. One motion asked the trial court to reconsider its decision on the motion to suppress, particularly with respect to the admissibility of GPS location data from an ankle bracelet that Henry was wearing while on parole for a prior offense, which his parole officer shared with police investigators as part of the murder investigation.[3] SR1 at 130–70. In the other, Henry asked the trial court to relieve his appointed counsel so that he could represent himself. *See, e.g.,* SR1 at 171–73.

The trial court held a hearing on the motions on November 19, 2013. Tr1 at 204–30. At the outset, the trial court noted that trial was set to begin on December 3, 2013, just two weeks away. Next, the court denied Henry's *pro se* motion to suppress the GPS data, and observed that the court had already addressed the issues raised in Henry's papers when it denied trial counsel's motion in July 2013. Tr1 at 208–11.

Then, the trial court engaged in a lengthy colloquy with Henry regarding his motion to represent himself at trial:

> THE DEFENDANT: According to my understanding, what I have read about the law, I have a Sixth Amendment right to self representation, a constitutional right to self-representation and I wish to exercise that right. I have brought issues, I have written you a few times in the last few months concerning my belief and I feel the attorney I have has been ineffective in assisting me. He hasn't investigated my claims and other issues I feel like I want to bring to the attention of The Court. He

---

[3] At trial, Henry's parole officer, Douglas Rusinko, testified that he used the GPS tracking device he had placed on Henry's ankle to provide the Rochester Police Department with his location on February 7, 2013, the date of Henry's arrest. Tr1 at 874–75. He later requested historical data from the tracking company. Tr1 at 875. Additionally, a representative of the tracking company testified as to the collection of the GPS data regarding Henry's whereabouts on February 3, 2013, the date the victim was murdered, and February 4, 2013, the day the victim's body was dumped in a ravine at Tryon Park in Rochester, New York. Tr1 at 942–43. The information showed Henry was at the victim's house on February 3, and that he travelled from the victim's house to Tryon Park on February 4. *See* Tr2 at 567.

haven't [sic] come to see me like I feel he should have or, you know, counsel me on the matters I feel that's going on in my case and I feel like I could do a better job of speaking to The Court on my issues in any aspect. And it's my right and my constitutional right . . . .

THE COURT: You also understand, Mr. Henry, that although you have a fundamental right to counsel as opposed to representing yourself, and I'm not disagreeing that Courts do allow individuals to represent themselves under specific circumstances, that you should be aware of the advantages and mainly the disadvantages of representing yourself as opposed to having an attorney who is trained in the law.

\* \* \*

But it's a situation, Mr. Henry, where if you do represent yourself, you are still subject to the same court rules, the same rules of evidence that a trained attorney would be obligated to perform on your behalf . . . that this Court and no one else can assist you regarding the examination of witnesses, regarding the rules of evidence, regarding objections that might be made; all of which may, at least in my opinion because of the significance and the severity of this case, be totally detrimental and prejudicial to your cause.

\* \* \*

This Court is here to ensure a fair trial for everybody. And knowing that you're charged with murder, The Court takes your request very seriously. And I'm not about to deny you the right so long as it properly meets legal criteria, that is the right to represent yourself. I'm going to tell you that I would think very long, very hard and very seriously about doing that. Because I don't wish you to be in a position, after you represent yourself, if you do, and then receive a detrimental result or a verdict against you, complain that you now wanted an attorney and you should have had an attorney and this Court made an improper ruling.

THE DEFENDANT: It not just strategy that I do this. It's not because I feel it's a good strategy, it's the fact that even though certain issues was raised with respect to my claims, I don't feel the [GPS data from the parole officer] issue was raised at all, you understand, with respect to the pro se request I put in.

THE COURT: But then again, you're back to what I just said. I have already ruled on that. You are now referring to matters that have already been presented to The Court and I have already decided. And a trial is totally separate and distinct from all those earlier hearings, all those earlier motions.

\* \* \*

The trial now relates to the allegations of the incident for which you have been

charged. It doesn't relate to prior hearings that I have had, prior decisions that I have made. Do you understand what I'm saying, Mr. Henry? And the fact that you keep repeating that, at least in main part, all the more is indicating to The Court that you don't have the necessary ability and knowledge . . . . to represent yourself.

\* \* \*

. . . you don't know the rules of evidence, you don't know trial procedure, you don't know how to question witnesses, you don't know direct-examination.

\* \* \*

Do you know anything about jury selection?

THE DEFENDANT: Only a little bit. What I read; not much though.

THE COURT: Do you know anything about opening statements and closing arguments and summations?

THE DEFENDANT: To some degree. I seen a lot of movies and Law and Order.

THE COURT: See this is not a movie, this is not a television show . . . . I'm giving you the benefit of every opportunity and benefit of the doubt and that is why I want the record to establish this, that the inquiries being made by The Court and some of the responses made by the defendant do not, in my opinion, satisfy the requirement of caselaw that any waiver of counsel . . . is unequivocal and intelligent. Again, I'm not saying the defendant is not intelligent, I'm merely indicating he doesn't have, in my opinion, the legal intelligence or the legal ability following what I deem to be a search[ing] inquiry as to conducting a trial separate and apart from counsel.

I'm also not satisfied, Mr. Henry, that you're aware and appreciate the actual dangers and, even in this case, mainly because of the allegations, disadvantages which you would be facing in the event you represent yourself without counsel.

This is not the type of case – and I believe the record will bear this Court out and certainly will any Appellate review – namely, murder in the first degree, not murder in the second degree, where I believe you should represent yourself. I don't believe, even though this Court has discretion to grant requests in proper situations so long as I'm satisfied that there has been a voluntary and unequivocal and intelligent waiver, I'm not satisfied that there is based on what you've said. I believe you just want to try the case by yourself because that's your position, without knowing what you are facing or what the likelihood of success might be.

\* \* \*

> You may not see this, Mr. Henry, but I'm here to preserve your rights as well as the rights of The People of the State of New York and I'm not satisfied that your rights are being protected and preserved by having you appear before a jury based on the information you have already given this Court because I see only problems, difficulties, obstacles and hurdles during the course of the trial because of your inability and your lack of knowledge . . . .
>
> * * *
>
> THE DEFENDANT: What is the exact law on me representing myself and then giving back up that right to have counsel again?
>
> THE COURT: Essentially, in substance, and again, you're not an attorney and now you're asking me what the law is. That really is not my duty, but I will answer your question as best I can. I must be satisfied that you essentially know what you're doing, that you are giving up your right to counsel, which you do have a constitutional right, as well as if you wish to represent yourself, you can do that as well under caselaw. But I have to be satisfied that you know what you're doing. That you're intelligent enough to try your own case. That you're voluntarily dispensing or waiving your right to a lawyer.
>
> * * *
>
> . . . I have already hinted and now I'm going to formally state that I don't find there to be satisfactory, if any, compliance with relevant caselaw regarding your request to represent yourself.

Tr1 at 213–28. Following this exchange, the trial court denied Henry's application to represent himself. Tr1 at 229.

The jury trial was held in December 2013, and Henry was convicted of murder in the first degree. Pet. at 1. He was sentenced in January 2014 to life imprisonment with no possibility of parole. Trial Transcript 2 ("Tr2"), 661, May 13, 2020, ECF No. 16-5.

On his counseled direct appeal, Henry argued (1) that the trial evidence could not support a conviction for murder in the first degree; (2) that he was unjustifiably deprived of his constitutional right to represent himself; and, (3) that the Court erred in denying him a probable cause hearing on his parole officer's provision of Henry's location information to police based upon the GPS tracking device in the ankle bracelet he was wearing while on parole for a prior

5

offense. SR1 at 2–52.

With respect to the first argument, the state appellate division agreed with Henry and reduced his conviction of murder in the first degree to murder in the second degree, vacated Henry's sentence, and remanded the case back to the trial court for resentencing. State Record, vol. 2 ("SR2"), 49, May 13, 2020, ECF No. 16-3. However, with respect to Henry's other two arguments, the appellate division found that "the record as a whole demonstrates that the [trial] court did not unjustifiably deny [Henry's] request to waive counsel so that he could represent himself at trial," and it rejected Henry's argument that the trial court committed reversible error by denying his motion for a suppression hearing on the GPS evidence. SR2 at 50–51.

On remand, the trial court resentenced Henry to an indeterminate sentence with a minimum term of 25 years' imprisonment, and a maximum term of life imprisonment. Tr2 at 679. In June 2018, the appellate division denied Henry leave to appeal his modified sentence, as did the New York Court of Appeals at the end of the following month. SR2 at 62, 83. Henry does not appear to have sought review by the United States Supreme Court, or to have pursued any further collateral attacks or appeals.

In August 2019, Henry filed the petition for habeas relief that is presently before the Court.

### III. STANDARD OF REVIEW

28 U.S.C. § 2254 provides that ". . . a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." The legal standards applicable to such a petition are well-settled.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas petitions must be filed within one year of the date on which the petitioner's state judgment became final, though the filing of certain state court collateral attacks on a judgment tolls the

limitations period. 28 U.S.C. § 2244(d)(1)–(2). A judgment becomes final "after the denial of certiorari [by the U.S. Supreme Court] or the expiration of time for seeking certiorari." *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001).

For those petitions that are timely filed, 28 U.S.C. § 2254 requires federal courts to give deference to state courts' decisions. *See Chrysler v. Guiney*, 806 F.3d 104, 117 (2d Cir. 2015) (citing AEDPA, Pub. L. No. 104-132, 110 Stat. 1214). "First, the exhaustion requirement ensures that state prisoners present their constitutional claims to the state courts in the first instance." *Jackson v. Conway*, 763 F.3d 115, 132 (2d Cir. 2014). *See also Daye v. Attorney General*, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*) (stating that the "exhaustion requirement is not satisfied unless the [petitioner's] federal claim has been 'fairly presented' to the state courts."). Second, "[s]hould the state court reject a federal claim on procedural grounds, the procedural default doctrine bars further federal review of the claim, subject to certain well-established exceptions." *Id.* (citing *Wainwright v. Sykes*, 433 U.S. 72, 82–84 (1977)). Lastly, federal courts considering claims that were decided by state courts on the merits must employ "a highly deferential standard for evaluating state-court rulings," and must give those state-court decisions "the benefit of the doubt." *Jones v. Murphy*, 694 F.3d 225, 234 (2d Cir. 2012) (quoting *Hardy v. Cross*, 565 U.S. 65, 66 (2011)). In such cases, a federal court may issue a writ of habeas corpus only when the state-court adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law," or that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(1)–(2).

A principle is "clearly established federal law" for § 2254 purposes when it is embodied in a Supreme Court holding framed at the appropriate level of generality. *Washington v. Griffin*,

876 F.3d 395, 403 (2d Cir. 2017) (quoting, *inter alia*, *Thaler v. Haynes*, 559 U.S. 43, 47 (2010)). A state court decision is "contrary to" such clearly established law when the state court either has arrived at a conclusion that is the opposite of the conclusion reached by the Supreme Court on a question of law, or has "decided a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Washington*, 876 F.3d at 403 (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). An "unreasonable application" of such clearly established law occurs when the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case such that "the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Washington*, 876 F.3d at 403 (citation omitted). Where a factual determination is at issue, the petitioner has the burden of showing by clear and convincing evidence that a state court's determination was incorrect. § 2254(e)(1).

## IV. DISCUSSION

As indicated above, Henry's habeas petition identifies two issues warranting relief: (1) that the state trial court violated his rights under the Sixth and Fourteenth Amendments when it denied his motion to represent himself; and, (2) the trial court violated his Fourteenth Amendment rights to due process and to confront adverse witnesses when it denied his *pro se* motion for a suppression hearing on the GPS evidence. Respondents maintain that Henry's petition should be denied on its merits because the state court's determination denying Henry the opportunity to represent himself at trial was not an unreasonable application of federal law, and because his claim regarding the suppression hearing is not cognizable on habeas review. Resp. Mem., 13–14, May 13, 2020, ECF No. 15.

After a thorough review of Henry's papers and the state court record and transcripts, the

Court finds in accordance with Rule 8 of the Rules Governing Section 2254 Cases that an evidentiary hearing is not necessary to address Henry's claims. *See also* 28 U.S.C. § 2254(e)(2). Further, the Court agrees with Respondent that Henry's petition is without merit.

A. The State's Determination that Henry Could not Represent Himself was Not Unreasonable.

Henry's claim that the trial court denied him his constitutional right to represent himself at trial is based on his belief that "[i]n making its decision, the court was improperly driven by its own paternalistic concern that petitioner lacked relevant trial skills and would be putting himself at a disadvantage." Pet. at 19. That is, Henry maintains that the trial court's finding that his waiver of his Sixth Amendment right to counsel was not knowing, voluntary and intelligent was merely a pretext for the court's real concern that he "did not have adequate skills and training to try his own case." *Id.*

*Legal Principles*

Under federal law, it is well-settled that "[t]he Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense." *Faretta v. California*, 422 U.S. 806, 819 (1975). In other words, a defendant has "has a constitutional right to waive the right to assistance of counsel and present [his] own defense *pro se* . . . .'" *Clark v. Perez*, 510 F.3d 382, 394–95 (2d Cir. 2008) (quoting *Faretta*, 422 U.S. at 835 (1975)). "Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless." *McKaskle v. Wiggins*, 465 U.S. 168, 177 (1984).

The Supreme Court has outlined a two-part inquiry to guide courts faced with a defendant seeking to waive his Sixth Amendment right to counsel. First, the court must determine that the defendant is competent to waive his constitutional right to counsel by discerning whether the

9

defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (finding that the standard for the competence to stand trial is the same as for waiving the right to counsel, relying upon *Dusky v. United States*, 362 U.S. 402 (1960)). Importantly, "the competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the [technical legal] competence to represent himself." *Godinez*, 509 U.S. at 399.

Second, the "trial court must satisfy itself that the waiver of [the defendant's] constitutional rights is knowing and voluntary." *Godinez*, 509 U.S. at 400 (citing *Faretta*, 422 U.S. at 835). The waiver is knowing and voluntary when the "defendant appreciates the risks of forgoing counsel and chooses to do so voluntarily . . . ." *Indiana v. Edwards*, 554 U.S. 164, 183 (2008) (Scalia, J. dissenting). Accordingly, the court should hold a colloquy with the defendant in which "he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)). *See, e.g., United States v. Schmidt*, 105 F.3d 82, 88 (2d Cir. 1997) ("To ensure the waiver is knowing and intelligent, a trial court should engage the defendant in an on-the-record colloquy sufficient to persuade the court [f]rom defendant's answers and from its own observations . . . [that] the waiver is a rational one, and that defendant has the mental capacity to comprehend the consequences of relinquishing a constitutional right.").

*Application*

Here, the trial court's decision denying Henry's motion to represent himself was neither contrary to, nor an unreasonable application of, clearly established federal law, and Henry has

10

not made a clear and convincing showing that it was based on an unreasonable factual determination.

The Court acknowledges that in the course of its colloquy with Henry, the state trial court did comment in certain instances on his technical legal knowledge, considerations of which have no legal bearing on whether Henry was competent to represent himself. *See Godinez*, 509 U.S. at 400 (a criminal defendant's ability to represent himself has no bearing upon his competence to choose self-representation). For instance, the trial court cautioned Henry that he didn't know the rules of evidence (Tr1 at 220), that movies and television would not be sufficient guides for his opening and closing statements (Tr1 at 221), and that the likelihood of his success while representing himself was "minimal" (Tr1 at 222). However, when viewed in the context of the colloquy as a whole, it is clear that the trial court's comments were intended to help educate Henry about the dangers of representing himself, and evaluate whether he truly understood "the dangers and disadvantages of [self] representation." *Faretta*, 422 U.S. at 835.

The trial court's ruling, on the other hand, was based on the issues relevant to the established standard, and comports with federal law. To begin with, the trial court stated that it took Henry's request seriously, and would measure it against the "legal criteria." Tr1 at 215. Following a discussion with Henry, the trial court stated that his responses did not "satisfy the requirement of caselaw that any waiver of counsel . . . [be] unequivocal and intelligent." Tr1 at 221. The trial court was also not satisfied that Henry was "aware and appreciate[d] the actual dangers . . . of the allegations, [and] disadvantages [he] would be facing in the event [he] represent[ed] [himself] without counsel." Tr1 at 221. When Henry specifically challenged the trial court to recite the law on self-representation, the trial court reiterated that it "must be satisfied that you essentially know what you're doing, that you are giving up your right to counsel . . . . [and] voluntarily dispensing or waiving your right to a lawyer." Tr1 at 225.

Despite Henry's insistence that he understood the seriousness of the charge (Tr1 at 225), the trial court's determination that he did not appreciate the dangers and disadvantages of waiving his right to counsel was not unreasonable. Most obviously, Henry did not understand that his decision to go *pro se* – approximately two weeks before his trial for first degree murder – did not entitle him to revisit pretrial motions that the trial court had previously denied. Tr1 at 216. In particular, Henry indicated that he was not seeking to represent himself "because I feel it's a good strategy," but because he didn't feel that the issue of his parole officer's sharing data with the police had been "raised at all" in pretrial motion practice. Tr1 at 216. To that end, he sought again to have the trial court consider his motion to suppress the GPS information shared with police. Tr1 at 217, 222. When the trial court indicated that it had already ruled on those issues and would be focusing only on trial matters going forward, Henry didn't seem to understand that he could not put forward any additional pretrial motions or further pursue the GPS issue. Tr1 at 217. The court again indicated that motions on suppression issues had already been decided, and Henry protested that "[t]hey've been decided with representation, though," and asked, "I can still bring it forth [myself] and you can still deny it, right?" Tr1 at 218.

Accordingly, the Court finds that the trial court's determination that Henry's attempt to waive his right to counsel was not knowing and intelligent was not an unreasonable application of federal law or an unreasonable factual determination, and that Henry's claim that his Sixth Amendment rights were violated must be dismissed.

B. Henry's Argument Regarding a *Mapp* Hearing is Not Cognizable.

Henry also maintains that his due process rights and right to confront witnesses were violated when the trial court denied him a probable cause hearing on the GPS information that his parole officer shared with police investigators. Pet. at 20–22. Respondent construes Henry's argument as a Fourth Amendment claim for illegal search and seizure, and argues that such

pretrial claims are not cognizable in a federal habeas action. Resp. Mem. of Law at 21–23. The Court agrees.

First, Henry's claim that the trial court denied him the right to confront adverse witnesses is without merit. To be sure, Henry – through counsel – did confront both witnesses who took the stand at trial to testify to the GPS data that Henry's parole officer shared with police investigators. Officer Douglas Rusinko was Henry's parole officer at the time of his arrest. At trial, Henry's counsel argued that Officer Rusinko's testimony that he was a parole officer tainted the jury (Tr1 at 859), and that his testimony was in some instances without foundation (Tr1 at 867). Trial counsel also cross-examined Officer Rusinko, raising issues as to the accuracy of the GPS data. Tr1 at 880–86. With respect to the expert testimony from an employee of the company that produced the software that captured Henry's GPS data from his ankle device, trial counsel conducted a voir dire of her testimony regarding the accuracy of the GPS readings based on server locations (Tr1 at 904) and the demonstrative video evidence she presented (Tr1 at 924), challenged the foundation of some of her testimony (Tr1 at 911), and vigorously cross-examined her (Tr1 at 945–60). Under such circumstances, there can be no serious argument that Henry did not have the opportunity to confront adverse witnesses on the GPS issue.

With respect to the due process claim, it is well-settled federal law that "[s]ince the Fourth Amendment's right of privacy has been declared enforceable against the States through the Due Process Clause of the Fourteenth, it is enforceable against them by the same sanction of exclusion as is used against the Federal Government." *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). However, "[t]he Supreme Court has explicitly held that Fourth Amendment claims that have been litigated in state court are not cognizable on habeas review." *Bratcher v. McCray*, 419 F. Supp.2d 352, 356 (W.D.N.Y. 2006). In the case of *Stone v. Powell*, the Supreme Court stated:

> [W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. In this context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force.

*Stone v. Powell*, 428 U.S. 465 (1976).

Here, the state trial court considered the Fourth Amendment issue that Henry raises with respect to the GPS data. Notwithstanding Henry's argument to contrary, the trial court, Henry's trial counsel, and the prosecution clearly agreed that the trial court's July 2013 ruling denying Henry's counseled pre-trial motions to suppress evidence "addressed" or "encompassed" the sufficiency of the warrant with respect to the GPS information. *See* Tr1 at 207–11. Moreover, the state appellate division also considered the issue and rejected Henry's "contention that the trial court abused its discretion in denying his pro se supplemental motion to suppress evidence." SR2 at 51. Lastly, Henry submitted the issue to the New York Court of Appeals (SR2 at 63–64), and the state high court denied leave to appeal. SR2 at 83. Therefore, the Court finds that Henry was provided a full and fair opportunity to litigate the GPS data issue[4] in state court, and the issue is not cognizable on federal habeas review. *See, e.g., Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002) ("[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the [state] court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief.").

---

[4] In any event, Henry's claim lacks substantive merit. In overturning a district court decision suppressing GPS data shared by a defendant's parole officer with law enforcement, the Second Circuit recently held that "a parolee who chose to be placed on GPS monitoring rather than be charged with parole violations and possibly returned to prison, and who acknowledged that the monitoring would occur 24 hours a day, seven days a week, until the end of his period of supervision, had no reasonable or legitimate expectation of privacy that was violated by such monitoring." *United States v. Lambus*, 897 F.3d 368, 412 (2d Cir. 2018).

CONCLUSION

Based on the foregoing, it is hereby ORDERED that Petitioner Jerrell Henry's application for habeas relief [ECF No. 1] is denied. Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Henry has not made a substantial showing of the denial of a constitutional right. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Any requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure. The Clerk of the Court is hereby ordered to close this case.

SO ORDERED.

Dated:   July 28, 2023

Rochester, New York

ENTER:

*Charles J. Siragusa*
CHARLES J. SIRAGUSA
United States District Judge